Eric R. Wilson, State Bar No. 030053
Cassidy L. Bacon, State Bar No. 031361
**NAPIER, BAILLIE, WILSON, BACON, & TALLONE, P.C.**
2525 E. Arizona Biltmore Circle, Suite 135
Phoenix, AZ 85016-0001
Phone: (602) 248-9107
ewilson@napierlawfirm.com
clbacon@napierlawfirm.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nichol Royston, an individual, | ) |
| | ) Case No.: |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT FOR DAMAGES;** |
| | ) **DEMAND FOR JURY TRIAL** |
| City of Scottsdale, a municipal corporation; Jeffrey Walther, Richard Slavin, Matthew Evans, Christopher DiPiazza, Jill Boehm, Don Tellis, Donna Brown, and Alexander Ristuccia, individually and in their official capacities; and Does 1-20, | ) ) **1. ADA** ) **2. REHABILITATION ACT** ) **3. FMLA** ) **4. FFCRA** ) ) |
| Defendants. | ) |

For her Complaint against the City of Scottsdale, Jeffrey Walther, Richard Slavin, Matthew Evans, Christopher DiPiazza, Jill Boehm, Don Tellis, Donna Brown, and Alexander Ristuccia (collectively, "Defendants"), Plaintiff Nichol Royston alleges as follows:

## INTRODUCTION

1. Plaintiff Nichol Royston is an individual with a physical disability who has been employed by Defendant City of Scottsdale for over 16 years within its Police

1

Department, the first year as a Police Support Specialist and the rest as a Police Aide. During that time, she has received overwhelmingly positive performance reviews. In February 2021, she applied and was selected for a specialty position. Her transfer was later rescinded after her medical condition was made known Department-wide. Plaintiff was first informed that the recission was due to her medical condition and later informed that it was due to the amount of leave she had taken in the two years preceding, nearly all of which was leave protected under federal law. Not only was her transfer to the specialty position rescinded, but she was also transferred to a less desirable, and more physically demanding, position. Plaintiff brings this action under the Americans with Disabilities Act and subsequent amendments (hereinafter, "ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178 (2020), seeking redress for the discrimination and retaliation she suffered as a result of Defendants' actions.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 794a(2), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 2000e-5(f)(3). This Court also has jurisdiction to award the requested relief, including attorneys' fees. *See* 28 U.S.C. §§ 1331, 1367, and 2202, Fed. R. Civ. P. 57, and 42 U.S.C. § 1988(b).

3. Venue properly lies within this District under 28 U.S.C. § 1391(b), as Plaintiff's claims arose out of facts occurring in this District.

4. Defendants are all public officials or other employees or agents of the City of Scottsdale, as well as the City itself. Each of the Defendants resides within this District and/or performs official duties within the State of Arizona. This Court, accordingly, has personal jurisdiction over each of the Defendants.

5. On October 29, 2021, Plaintiff filed a Charge of Discrimination on the bases of disability and retaliation against Defendant City of Scottsdale with the Equal Employment Opportunity Commission ("EEOC"). A true and correct copy of that Charge is attached as **Exhibit A**.

6. On January 4, 2022, the EEOC dismissed Plaintiff's Charge and issued Plaintiff a Dismissal and Notice of Rights to sue in federal or state court within 90 days on Plaintiff's receipt of the Notice. A true and correct copy of the Notice is attached as **Exhibit B**.

7. Plaintiff exhausted her administrative remedies under the ADA against Defendant.

8. Plaintiff files this Complaint under the ADA against Defendant within 90 days of her receipt of the EEOC Notice.

9. There is no administrative exhaustion requirement for Plaintiff's claims under Section 504 of the Rehabilitation Act.

10. There is no administrative exhaustion requirement for Plaintiff's FMLA claims against Defendant. 29 U.S.C. § 2617(a)(2).

**PARTIES**

11. Plaintiff is, and was at all relevant times, a resident of the County of Maricopa, State of Arizona.

12. Defendant City of Scottsdale is a municipal corporation of the State of Arizona located within Maricopa County. It acts through its employees and agents, including Defendants Jeffrey Walther, Richard Slavin, Matthew Evans, Christopher DiPiazza, Jill Boehm, Don Tellis, Donna Brown, and Alexander Ristuccia.

13. Defendant Jeffrey Walther is the duly appointed Police Chief of the City of Scottsdale Police Department.

14. Defendant Richard Slavin is employed by the City of Scottsdale as an Assistant Chief with the Police Department.

15. Defendant Matthew Evans is employed by the City of Scottsdale as a Commander with the Police Department.

16. Defendant Christopher DiPiazza is employed by the City of Scottsdale as a Lieutenant with the Police Department.

17. Defendant Jill Boehm is employed by the City of Scottsdale as a Police Operations Support Director.

18. Defendant Don Tellis is employed by the City of Scottsdale as a Human Resources Senior Analyst assigned to the Police Department.

19. Defendant Donna Brown is employed by the City of Scottsdale as a Human Resources Director.

20. Defendant Alexander Ristuccia is employed by the City of Scottsdale as a Traffic Program Manager with the Police Department.

///

///

4

**FACTS**

21. On June 27, 2005, Plaintiff was hired by Defendant as a Police Support Specialist in the Records Unit of the Scottsdale Police Department.

22. On March 18, 2006, Plaintiff was promoted to Police Aide and assigned to patrol.

23. In May 2011, Plaintiff applied for and was transferred to a Police Aide specialty position as a Hearing Officer in the Police Department's Traffic Enforcement Section's Vehicle Impound Unit. She served in this position until May 6, 2021.

24. From January 29, 2020 to April 27, 2020, Plaintiff utilized 12 weeks of approved FMLA leave for maternity leave following the birth of her first child.

25. At that time, Plaintiff was informed that she would be unable to utilize all 12 weeks of FMLA leave if her child's father, also a City of Scottsdale employee, intended to utilize FMLA leave for the same event.

26. On August 6, 2020, Plaintiff complained of unfair treatment by her direct supervisor, Traffic Program Manager Alexander Ristuccia, regarding what she perceived to be preferential treatment of a male coworker regarding holiday time off.

27. A meeting was held on August 19, 2020 to discuss the complaint. Present were Lt. DiPiazza, Human Resources Senior Analyst Don Tellis and Mr. Ristuccia. At the meeting, Lt. DiPiazza and Mr. Tellis refused to investigate the complaint and threatened to transfer Plaintiff back to patrol duty.

28. Upon information and belief, on August 25, 2020, Lt. DiPiazza and Mr. Ristuccia imposed several leave restrictions for the Vehicle Impound Unit. A unit calendar

was created and shared with the Photo Enforcement Unit. The calendar documented details of employee leave time, including personal medical leave information.

29. On October 27, 2020, Plaintiff was diagnosed with a neuroendocrine tumor and referred to a surgeon.

30. On October 28, 2020, Plaintiff notified her chain of command, Lt. DiPiazza and Mr. Ristuccia, of her diagnosis and the potential for needing time off for surgery

31. On November 10, 2020, Plaintiff requested medical leave and FMLA. Her request for medical leave was approved but FMLA was denied due to exhausting her available time while on maternity leave.

32. Also in November 2020, Plaintiff suffered a fever and was required by the Department to receive a negative Covid-19 test before returning to work. She missed two days of work.

33. Plaintiff was on medical leave from December 1, 2020 to February 1, 2021 for surgery related to her cancer diagnosis.

34. While on medical leave, a Police Aide Specialty position in the Photo Enforcement Unit became available.

35. Upon information and belief, Lt. DiPiazza called Plaintiff's fiancé, a Scottsdale Police Detective, and encouraged him to share the open position with Plaintiff.

36. On December 16, 2020, Plaintiff applied for the Photo Enforcement Police Aide position.

37. Upon returning to work, on February 9, 2021, Plaintiff met with Mr. Ristuccia regarding the open Photo Enforcement Unit position. Mr. Ristuccia encouraged Plaintiff to continue in the hiring process.

38. On February 16, 2021, Plaintiff participated in an oral board interview for the Photo Enforcement Unit position. She passed the interview and continued in the hiring process.

39. Upon information and belief, as is consistent with City hiring policy for internal candidates, the City conducted an administrative review of Plaintiff's employment records, including her prior leave usage.

40. On February 16, 2021, Plaintiff was offered the position, and an email was sent to all Scottsdale Police Department employees advising them that Plaintiff received the position with a transfer date to be determined.

41. Consistent with City policy, Plaintiff's name was placed on a transfer list that was to remain in place for one year. If the transfer did not occur within the year, the job could be reposted, and a new application process would start.

42. Upon information and belief, this is done in case more than one person qualifies for a position. The first person would transfer and if another spot opened within a year, employees further down the list could also transfer.

43. On February 16, 2021, Plaintiff was informed that her transfer would occur once a replacement was hired and trained for the Vehicle Impound Unit Police Aide position.

44. On March 2, 2021, Plaintiff received her Covid-19 vaccination on duty. She suffered an adverse reaction and was on leave through March 4, 2021.

45. On March 16, 2021, a flyer regarding a medical bill fundraiser benefitting Plaintiff was emailed Department-wide. Plaintiff's medical issues were detailed in the email, as well as the potential need for future medical procedures.

46. On March 17, 2021, Plaintiff's chain of command held a meeting. Present at the meeting were Assistant Chief Slavin, Commander Matthew Evans, Lt. DiPiazza, HR Senior Analyst Tellis, City Attorney William Hylen, Police Operations Support Director Jill Boehm, and Mr. Ristuccia.

47. Upon information and belief, a decision was made at that meeting to remove Plaintiff from her position in the Vehicle Impound Unit, transfer her to patrol, and rescind her transfer to the Photo Enforcement Unit due to her medical condition.

48. On April 1, 2021, Lt. DiPiazza notified Plaintiff of the decision and informed her that the decision was made "to help with her medical condition." Plaintiff requested to be transferred to an office position rather than patrol due to her disability.

49. Contrary to Department policy, Plaintiff never received a written explanation for her job offer being rescinded.

50. On April 7, 2021, Plaintiff received an email from Mr. Ristuccia and Lt. DiPiazza formally advising her that she was being transferred to patrol.

51. The City's decisions caused Plaintiff significant stress because patrol assignments are more physically demanding than either the specialty position she was in or the specialty position that she was supposed to transfer to.

52. On April 12, 2021, Plaintiff again applied for FMLA, anticipating that she would need to utilize FMLA leave to handle the physical demands of a patrol position. FMLA leave was approved.

53. On April 19, 2021, while at work, Plaintiff suffered from stroke-like symptoms, requiring that she be transported by ambulance to Banner Desert Medical Center for treatment. She was ultimately diagnosed with a complicated migraine, which doctors suspected may have been stress induced.

54. On May 4, 2021, Plaintiff met with Chief Walther and Assistant Chief Slavin to discuss a workplace complaint. Also present was Detective James Nolan, Plaintiff's fiancé, who served as an observer from Plaintiff's employee union, the Fraternal Order of Police. Asst. Chief Slavin immediately asked Plaintiff whether she had considered going on disability. Plaintiff later advised that she could not work on patrol due to her medical condition and explained that she had heat intolerant cancer and gastrointestinal symptoms resulting from her surgery which necessitated a position in proximity to a restroom.

55. Despite her expressed concerns, Plaintiff was transferred back to patrol on May 5, 2021, where she was expected to work 10-hour shifts in a patrol vehicle out in the elements.

56. The transfer was announced by Department-wide email, causing significant embarrassment to Plaintiff. Several employees contacted Plaintiff and her fiancé to inquire as to why she lost the Photo Enforcement Unit position.

57. Due to the transfer, Plaintiff was forced to enter the City's light duty program, a short-term program intended to accommodate injured employees during their recovery.

58. Because the City's light duty program prohibits employees from working overtime or compensatory time, Plaintiff was no longer eligible for overtime. Her work hours and location were also changed, causing further inconvenience.

59. On May 12, 2021, Plaintiff filed a written complaint with the Chief's office regarding the recission of her transfer. The complaint was referred to Internal Affairs, complaint #IA2021-056.

60. Upon information and belief, Internal Affairs investigated her complaint but failed to interview key witnesses and ignored evidence provided by Plaintiff.

61. On August 25, 2021, Plaintiff was informed that Internal Affairs did not sustain any policy violations as a result of her complaint.

62. The investigation revealed that HR, through Mr. Tellis, had justified the rescission by stating that "[t]he Department . . . foresees that there will be some more extensive absences in the future." No rationale was provided for this justification, which differed from the one originally provided to Plaintiff.

63. On August 31, 2021, Plaintiff emailed Human Resources Director Donna Brown and advised that she wished to appeal the Internal Affairs decision. She was advised that she had no appeal rights as a complainant.

64. Later that day, Plaintiff received a notification from Human Resources that her FMLA approval was being reviewed and that a meeting had been scheduled to discuss her file.

65. During that meeting, on September 1, 2021, Plaintiff was advised that the HR analysts had decided to review the FMLA files because they wanted to do better, and that Plaintiff's file had just risen to the top. HR also informed Plaintiff that they wanted to see if she could still perform the essential functions of her job or whether the City needed to accommodate her.

66. On September 27, 2021, Plaintiff was voluntarily reinstated to full duty to ensure her continued employment. She requested an open position as a front desk Police Aide at the district 2 station, located at 3700 N 75th St., and was transferred on October 10, 2021. Upon information and belief, approval for the transfer took place without the knowledge of the prior decisionmakers.

67. On November 17, 2021, Plaintiff applied for a specialty unit position in the Special Victim's Unit's Sexual Offender Unit. Curiously, she came in last place on the transfer list despite having the most seniority, having done a temporary duty assignment in the unit to prepare, and having done well in the interview.

68. On February 17, 2022, the transfer list for the Police Aide Specialty position in the Photo Enforcement Unit expired.  The open position was reposted March 1, 2022, and the position was filled on March 31, 2022.

/ / /

/ / /

**COUNT ONE: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

69. Plaintiff realleges and incorporates by reference each paragraph above into this claim.

70. Under the ADA, it is unlawful for covered employers to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

71. Defendant City of Scottsdale is a covered employer under the ADA.

72. Plaintiff is a qualified individual with a disability under the ADA.

73. Under the ADA, prohibited actions include "refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege or employment." 29 C.F.R. § 1630.2(l)(1).

74. Defendants discriminated against Plaintiff on the basis of her disability by failing to accommodate Plaintiff, rescinding Plaintiff's transfer to the Photo Enforcement Unit position she applied for and was offered, and transferring her to the more physically demanding patrol position, all because of her disability.

75. Defendants retaliated against Plaintiff in violation of the ADA by subjecting her to adverse employment action after she complained of discriminatory treatment.

76. Plaintiff has suffered damages as a result of Defendants' unlawful actions.

## COUNT TWO: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

77. Plaintiff realleges and incorporates by reference each paragraph above into this claim.

78. Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely, or by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

79. The Rehabilitation Act incorporates the obligations and standards of the ADA. *Fleming v. Yuma Regional Medical Center*, 587 F.3d 938, 940-41 (9th Cir. 2009).

80. Upon information and belief, Defendant City of Scottsdale is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.

81. Defendant regarded Plaintiff as disabled within the meaning of Section 504 of the Rehabilitation Act.

82. Defendants violated Section 504 of the Rehabilitation Act by discriminating against Plaintiff on the basis of her disability.

83. Defendants' actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the Rehabilitation Act and the ADA.

84. Plaintiff has suffered damages as a result of Defendants' unlawful actions.

///

///

## COUNT THREE: VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

85. Plaintiff realleges and incorporates by reference each paragraph above into this claim.

86. At all times relevant to this Complaint, Defendant City of Scottsdale was a covered employer under the Family and Medical Leave Act ("FMLA"), as it was engaged in an industry affecting commerce, and it employed 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

87. Plaintiff was covered under the FMLA as an employee with a serious health condition employed by Defendant for at least 12 months and who had performed at least 1,250 hours of service during the previous 12-month period. *Id.* at § 2611(2).

88. Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* at § 2615(a).

89. The FMLA's "prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

90. "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.*

91. Employers who violate the FMLA "may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct

result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered." *Id.* at § 825.220(b); 29 U.S.C. § 2617.

92. Defendants interfered with Plaintiff's rights in violation of the FMLA by using her approved FMLA leave as a reason to rescind her transfer to the Photo Enforcement Unit.

93. Defendants retaliated against Plaintiff in violation of the FMLA by subjecting her to adverse employment action in the form of increased scrutiny of her FMLA file, after she complained of actions by Defendants that interfered with her rights under the FMLA.

94. Defendants' actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

95. Plaintiff has suffered damages as a result of Defendants' unlawful actions.

**COUNT FOUR: VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT (FFCRA)**

96. Plaintiff realleges and incorporates by reference each paragraph above into this claim.

97. Plaintiff was eligible for leave under the FFCRA.

98. At all times material, Defendants knew, or should have known, of Plaintiff's need for FFCRA because she was unable to work after an exposure to Covid-19 and, later, after an adverse reaction to the Covid-19 vaccination.

99. Plaintiff gave Defendants proper notice of her need for FFCRA leave.

100. Plaintiff took FFCRA leave in November 2020 and again in March 2021.

101. Defendants interfered with Plaintiff's rights in violation of the FFCRA by using her approved FFCRA leave as a reason to rescind her transfer to the Photo Enforcement Unit.

102. Defendants retaliated against Plaintiff in violation of the FFCRA by using her approved FFCRA leave as a reason to rescind her transfer to the Photo Enforcement Unit.

103. Defendants' motivation for rescinding Plaintiff's transfer to the Photo Enforcement Unit was causally connected to Plaintiff's request for FFCRA leave.

104. Defendants have acted in bad faith by retaliating against Plaintiff in violation of the FFCRA.

105. As a result of Defendants' retaliation, Plaintiff suffered adverse employment actions causing her harm.

## JURY TRIAL

Plaintiff demands a jury trial as to all issues triable by jury.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court grant her the following relief:

(a)   A declaratory judgment that Defendants discriminated and retaliated against Plaintiff in violation of Title I of the ADA;

(b)   A declaratory judgment that Defendants discriminated against Plaintiff in violation of Section 504 of the Rehabilitation Act;

1    (c)   A declaratory judgment that Defendants interfered with and retaliated against Plaintiff in violation of the FMLA;

(d)   A declaratory judgment that Defendants interfered with and retaliated against Plaintiff in violation of the FFCRA;

(e)   An injunction ordering Defendant to provide Plaintiff reasonable accommodations necessary for Plaintiff to perform her essential job functions;

(f)   An order requiring Defendant to undergo periodic ADA and FMLA training;

(g)   Back pay with interest;

(h)   Compensatory and punitive damages;

(i)   Liquidated damages;

(j)   Attorneys' fees and costs;

(k)   Any other relief that this Court deems proper.

DATED this 4th day of April 2022.

**NAPIER, BAILLIE, WILSON, BACON & TALLONE, P.C.**

*/s/ Cassidy Bacon*
Eric R. Wilson
Cassidy L. Bacon
2525 E. Arizona Biltmore Circle, Suite 135
Phoenix, Arizona 85016
*Attorneys for Plaintiff*